UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

CIVIL ACTION NO. 10-12226-GAO

HEEWON LEE,
Plaintiff,

v.

BAC HOME LOANS SERVICING, LP,
A SUBSIDIARY OF BANK OF AMERICA, N.A.,
Defendant.

OPINION AND ORDER
January 18, 2013

O'TOOLE, D.J.

The plaintiff, proceeding pro se, asserts a number of federal and state law claims against Bank of America, N.A. ("BANA").[1] BANA moves this Court to dismiss the Amended Complaint for failing to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court addresses each claim in the order they are presented in the Amended Complaint.

**I.       Factual Background**

The following facts are alleged in the Amended Complaint: On October 24, 2007, Lee obtained a loan from BANA, secured by a mortgage on Lee's condominium located at 60 Rantoul Street, Beverly, Massachusetts. By April 2009, however, Lee was approximately two months behind in his mortgage payments. On May 4, 2009, Lee sent a Home Affordable Modification Program ("HAMP") application to BANA. Lee submitted a second application to

---

[1] Bank of America, N.A. is BAC Home Loans Servicing, LP's successor by merger as of July 20, 2011. (Notice of Merger and Name Change (dkt. no. 19).) Reference to "BANA," however, includes BAC Home Loans Services, LP, which, prior to the merger, serviced Lee's mortgage loan after it was in default (Pl.'s Mem. Supp. Mot. Leave Ex. 21 (dkt. no. 17-1).)

his mortgage insurance company, Genworth. On June 15, 2009, Genworth informed Lee that his application had been pre-qualified and forwarded to BANA. In a letter dated August 21, 2009, Harmon Law Offices, P.C. ("Harmon") informed Lee that it had been retained by BANA to foreclose on his mortgage. On September 15, 2009, Lee submitted a third HAMP application to BANA. By a letter from BANA dated August 26, 2009, Lee was informed that his request for help with his loan payment contained incomplete or outdated information regarding his income and expenses. In an undated letter, Lee was informed that BAC Home Loans Servicing, LP, had obtained the servicing rights to his mortgage loan and that he should, beginning with his first payment on or after November 16, 2009, make his mortgage payment to it.

On December 5, 2009, Lee submitted a fourth HAMP application to BANA. In a letter dated December 30, 2009,[2] Lee was provided notice of a foreclosure sale on his mortgage. In a letter dated January 25, 2010, Lee was informed that his request for help with his loan payment had been denied. The letter provides two reasons for the denial:

> [1.] The financial information submitted indicates that you do not have the resources to support a repayment plan or loan modification. If your financial situation improves, please contract BAC Home Loans Servicing, LP, for a re-evaluation of your request. [2.] The workout assistance you have requested is not an option.

(Compl. Ex. 212.)

On March 15, 2010, Lee contacted the Office of the Commissioner of Banks for Massachusetts ("Commissioner") requesting assistance in obtaining a loan modification from BANA. On July 26, 2010, Lee submitted an application for HAMP to BANA for the fifth time. In a letter dated August 19, 2010, a Customer Advocate from the Office of the CEO and

---

[2] The letter displays a Harmon masthead and is signed "Bank of America, N.A. By its attorney, Harmon Law Offices, P.C." (Compl. Ex. 129 (dkt. no. 2).)

President of BANA responded to the complaints Lee raised in his correspondence with the Commissioner. The Customer Advocate informed Lee that foreclosure proceedings "will remain inactive while you are in the loan modification review process." (Compl. Ex. 240.) The Customer Advocate added a proviso to that assurance: "It is possible that you may continue to receive automatically generated foreclosure notices during this period." (Id.)

On August 10, 2010, Lee sent a demand letter under Massachusetts General Laws Chapter 93A "to BAC." By a letter dated October 21, 2010, Lee was informed that he was approved to enter a Trial Payment Plan ("TPP"). Pursuant to that plan, Lee made the required three monthly payments in advance of the respective deadlines, submitting his final monthly payment on December 9, 2010. By a letter dated December 10, 2010, Lee was informed that he may be eligible for HAMP. Similarly, a letter dated December 3, 2010, informed Lee that his loan was past due and that he might qualify for a particular form of relief. On December 23, 2010, having received two correspondences that could be seen to be incompatible, Lee filed this action. On February 18, 2011, BANA offered Lee a permanent HAMP loan modification. Under the modification, Lee's monthly mortgage payments were reduced from $1,201.53 (Compl. Ex. 262) to $1,195.68 (Am. Compl. Ex. 1), a reduction of $5.85 per month. Lee was also informed that $30,238.90 in arrearages had been added to his principal loan balance. (Id.) Lee did not accept the modification.

**II.**   **Claims**

    A.    <u>Breach of Contract</u>

Lee alleges that the TPP constitutes a contract between himself and BANA, the promise binding upon BANA apparently being its undertaking to offer Lee a HAMP modification if he successfully made the three required TPP payments. Such allegations adequately allege a state

law breach of contract claim. See <u>Bosque v. Wells Fargo Bank, N.A.</u>, 762 F. Supp. 2d 342, 350-51 (D. Mass. 2011). The problem for Lee is that, on his telling, BANA *did* offer him a HAMP modification, just not one he could accept. The allegations are not sufficient to support a claim that by entering into a TPP, BANA had promised Lee a modification on particular terms or terms he would find acceptable. The weakness of the claim in Count I is not that it fails to allege a contract, but that it fails to allege a breach.

  <u>B.</u>  <u>Breach of the Duty of Good Faith and Fair Dealing</u>

  Lee further alleges that BANA routinely breached the duty of good faith and fair dealing by failing to perform loan servicing functions consistent with its promises and responsibilities to him, demanding information already in its files, making intentionally inaccurate calculations and determinations of his eligibility for HAMP, and failing to follow through on written and implied promises. The details of the course of dealing are set forth in the complaint, and the claim apparently is that after the long process, allegedly drawn out illegitimately by BANA, Lee's accumulated arrearage was so great that the HAMP modification offer was almost the same as the unmodified loan. If that circumstance was the result of a course of unfair or bad faith dealing by BANA, as Lee alleges, the implied covenant could be found to have been breached. This cause of action is adequately pled.

  <u>C.</u>  <u>Violation of Massachusetts General Laws, Chapter 93A, Section 2</u>

  If, as Lee alleges, BANA by bad faith or unfair dealing breached an implied covenant in the alleged TPP-based contract, then a cause of action may also be viable under Massachusetts General Laws, Chapter 93A, Section 2. BANA argues, however, that Lee failed to provide BANA with the statutorily-required demand for relief when he sent the demand letter to Home

Retention Services, Inc., at the following address:

> "Bank of America Mortgage
> Home Retention Group
> CHLGENFDR
> 9700 Bissonnet Street Suite 1500
> Houston, TX 77036." (Compl. Ex. 284.)

It is not likely that Lee made that address up, but rather that he got it from some representative of BANA communicating with him regarding his mortgage and its possible modification. It was reasonable for Lee to communicate with an entity apparently authorized by BANA to be dealing with him in regard to his mortgage loan. His Chapter 93A claim adequately alleges satisfaction of the notice requirement.

BANA's other argument is that permitting an action under Chapter 93A would be incompatible with the purpose of HAMP, which is to encourage negotiated workouts. There may be circumstances where that proposition would be true, but it is a stretch to effectively contend that bad faith and unfair dealing in the HAMP process, as Lee alleges, are not themselves incompatible with the program and its purpose. The Chapter 93A count is adequately pled.

D.     Violation of the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692c(b))

Lee also claims that BANA violated FDCPA when it "sent 7 letters of the foreclosure sale regarding Plaintiff's property to E.P. management company[3] from December 30, 2009[,] to May 19, 2010." (Am. Compl. ¶ 80.)

BANA correctly argues that the FDCPA claim must be dismissed because BANA is not a "debt collector" under the statute, 15 U.S.C. § 1692a(6), which defines the term as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal

---

[3] E.P. Management Corporation is the condominium management company.

purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." BANA was attempting to collect a debt owed to it, not another. Additionally, the statute from the definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent that such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." 15 U.S.C. § 1692a(6)(F)(iii). The mortgage loan was not in default, according to the allegations of the complaint, when first acquired by BANA, which was at its origination.

E.      Negligence

Lee's negligence claim fails because BANA owed Lee no common law tort-based duty of care. See Corcoran v. Saxon Mortg. Services, Inc., 2010 WL 2106179, at *4 (D. Mass. May 24, 2010) ("[A] lender owes no general duty of care to a borrower."); Brown v. Bank of America, 2011 WL 1311278 at *4 (D. Mass. Mar. 31, 2011).

F.      Violation of the Federal Trade Commission Act ("FTCA") (15 U.S.C. § 45(a)(1))

Lee's claim for violation of the FTCA must be dismissed because there is no private right of action under the FTCA. See Holloway v. Bristol-Meyers Corp., 45 F.2d 986, 987 (D.C. Cir. 1973) ("The central ruling in this case holds that private actions to vindicate rights asserted under the [FTCA] may not be maintained.").

G.      Intentional and Negligent Misrepresentation

Lee's claim for intentional and negligent misrepresentation does not allege any facts to support the legal conclusions asserted. While the Court is bound to take the facts contained in Lee's complaint as true, that does not extend to pleadings that offer "'labels and conclusions' or

'a formulaic recitation of the elements of a cause of action . . . .'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

     H.     <u>Intentional Infliction of Emotional Distress</u>

To maintain his claim for intentional infliction of emotional distress, Lee must plead sufficient facts to show that:

> (1) [T]he actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community[]"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

<u>Agis v. Howard Johnson Co.</u>, 355 N.E.2d 315, 318-19 (1976) (internal citations omitted).

Lee's claim fails to satisfy the second prong; BANA's conduct cannot be said to be beyond all possible bounds of decency, nor can it be said to be utterly intolerable in a civilized community. To be certain, Lee pleads sufficient facts to support a possible conclusion that BANA subjected him to a not insignificant runaround. A runaround is not, however, sufficiently extreme or outrageous to sustain a claim for intentional infliction of emotional distress.

**III.**     **Conclusion**

For the reasons set forth above, BANA's Motion to Dismiss (dkt. no. 23) is GRANTED with respect to Counts I (breach of contract), V[4] (violation of the FDCPA), VI (negligence), VII (violation of the FTCA), VIII (intentional and negligent misrepresentation), and IX (intentional

---

[4] Lee omitted a "Count IV" in his Amended Complaint. "Count V" is actually the fourth count.

infliction of emotional distress); and DENIED with respect to Counts II (breach of duty of good faith and fair dealing), and III (violation of Mass. Gen. Laws ch. 93A, § 2).

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge