UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

CIVIL ACTION NO. 10-12226-GAO

HEEWON LEE,
Plaintiff,

v.

BAC HOME LOANS SERVICING, LP,
A SUBSIDIARY OF BANK OF AMERICA, N.A.,
Defendant.

OPINION AND ORDER
September 30, 2014

O'TOOLE, D.J.

The plaintiff, Heewon Lee, proceeding *pro se*, brought a variety of state and federal claims against Bank of America, N.A. ("BANA") arising from the modification of his home loan under the Home Affordable Modification Program ("HAMP").[1] BANA filed an earlier motion to dismiss for failure to state a claim, and the Court granted BANA's motion with respect to all but two claims, a claim for breach of the implied covenant of good faith and fair dealing and violations of Massachusetts General Laws Chapter 93A. The defendant now moves for summary judgment of the remaining claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**I.    Factual Background**

The following facts appear from the record to be undisputed:

On October 24, 2007, Lee obtained a loan from BANA secured by a mortgage on Lee's condominium. By April 2009, Lee had fallen two months behind on his mortgage payments.

---

[1] Bank of America, N.A. is BAC Home Loans Servicing, LP's successor by merger as of July 20, 2011. (Notice of Merger and Name Change (dkt. no. 19).) Reference to "BANA," however, includes BAC Home Loans Services, LP, which serviced Lee's mortgage loan prior to the merger. (Pl.'s Mem. Supp. Mot., Ex. 29 at 21 (dkt. no. 17-1).)

That May, Lee sent a HAMP application to BANA and a second application to his mortgage insurance company, Genworth. On June 15, 2009, Genworth informed Lee that his application had been pre-qualified and forwarded it to BANA. In a letter dated August 21, 2009, Harmon Law Offices, P.C. ("Harmon") informed Lee that it had been retained by BANA to foreclose on his mortgage. In a letter dated August 26, 2009, BANA notified Lee that his HAMP application contained incomplete information.

In September and December 2009, Lee submitted two additional HAMP applications to BANA. In January 2009, Lee received notification from BANA that his request for a modification had been denied. In July 2010, Lee submitted a fifth application for HAMP to BANA. By a letter dated October 21, 2010, Lee was informed that he was approved to enter a Trial Payment Plan ("TPP"). Pursuant to that plan, Lee made the required three monthly payments, submitting his final payment in December 2010. By a letter dated December 10, 2010, Lee was informed that he may be eligible for HAMP. Similarly, a letter dated December 3, 2010 informed Lee that his loan was past due and that he might qualify for a particular form of relief.

About two months later, on February 18, 2011, BANA offered Lee a permanent HAMP loan modification. Under the modification, Lee's monthly mortgage payments were reduced from $1,201.53 to $1,195.68, a reduction of $5.85 per month. Lee was also informed that $30,238.90 in arrearages had been added to his principal loan balance. Lee did not accept the modification.

## II. Standard of Review

Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of

showing the basis for its motion and identifying where there exists a lack of any genuine issue of material fact. Id. at 323. A dispute is "genuine" only if a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must "view the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Discussion

### A. Violation of the Implied Covenant of Good Faith and Fair Dealing

Under Massachusetts law, the implied covenant of good faith and fair dealing applies to every contract. FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100 (1st Cir. 2009). The covenant ensures that the parties do not take actions "'that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.'" Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237-38 (1st Cir. 2013) (quoting T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 924 N.E.2d 696, 704 (Mass. 2010)). The covenant does not create new terms, rights, or duties not otherwise supplied in the contract. FAMM Steel, Inc., 717 F.3d at 100. Rather, "[t]he scope of the covenant is only as broad as the contract that governs the particular relationship." Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005). To prevail on a claim that the defendant breached the covenant, the plaintiff must show that the defendant "acted with an improper purpose" or otherwise "deprived [the plaintiff] of the contract's fruits." Young, 717 F.3d at 238-39.

The only actual contractual relationship between Lee and BANA arose from the loan and mortgage. Put simply, the implied covenant required BANA to avoid depriving Lee of benefits accorded to him from that contractual relationship. In practical terms, that might mean that

3

BANA was bound to refrain from interfering with Lee's performance of his payment obligations. Lee offers no evidence of any such interference with the terms of the existing contractual relationship.

Lee received an offer for a permanent modification agreement under HAMP. He rejected this offer, alleging that, after a drawn out and convoluted process, the accumulated arrearage essentially deprived him of any benefits of the modification. No implied covenant arose with respect to a potential contract that never came into existence. In particular, Lee was never guaranteed that the modified loan would not include his past due payments or would otherwise provide payment terms to his liking. See MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 493 (1st Cir. 2013) ("[N]othing in the mortgage imposes a duty . . . to consider a loan modification prior to foreclosure in the event of a default.").

Lee also alleges that BANA repeatedly requested supplemental information and was unresponsive when he tried to contact them. But mere evidence of "dilatory and careless conduct" – as opposed to evidence that BANA acted with an improper purpose or "a desire to gain an unfair advantage" – cannot sustain a claim for the implied covenant of good faith and fair dealing. Young, 717 F.3d at 239; see also FAMM Steel, Inc., 571 F.3d at 100-01. The record does not support a finding that BANA breached the covenant of good faith and fair dealing.

B.  Violation of Massachusetts General Laws Chapter 93A, Section 2

Massachusetts General Laws Chapter 93A bars "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. ch. 93A, § 2(a). Conduct is unfair where "'it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury.'" Young, 717 F.3d at 240 (quoting Linkage Corp. v. Trs. of Boston

4

Univ., 679 N.E.2d 191, 209 (Mass. 1997)). Conversely, conduct is deceptive where "it 'could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'" Johnson v. Indymac Mortgage Servicing, 2014 WL 1652594, at *12 (D. Mass. Apr. 22, 2014) (quoting Aspinall v. Philip Morris Cos., Inc., 813 N.E.2d 476, 486 (Mass. 2004)).

Lee contends that he should have received a HAMP modification when he first submitted his application in 2009. While it may be true that misrepresentations that a plaintiff is eligible for HAMP loan modifications will sustain a Chapter 93A claim, see, e.g., Johnson, 2014 WL 1652594, at *13; Stagikas v. Saxon Mortgage Ins., 2013 WL 5373275, at *4 (D. Mass. Sept. 24, 2013), the record does not indicate that BANA ever misled Lee by informing him that he was eligible for the modification before 2010. To the contrary, BANA repeatedly informed Lee that his application contained insufficient information. BANA's initial refusal to grant Lee a modification was not an independent violation of Chapter 93A. Okoye v. Bank of New York Mellon, 2011 WL 3269686, at *7 (D. Mass. July 28, 2011) ("[F]ailure to grant a HAMP loan, without more, is not a *per se* Chapter 93A violation.").

Lee also alleges that BANA requested the same information on multiple occasions and did not respond to his requests for clarification throughout the application process. To be sure, a "'history of being nonresponsive' . . . or requiring a borrower to resubmit the same documents" might in some circumstances support a Chapter 93A claim. See Charest v. Fed. Nat'l Mortgage Assoc., 2014 WL 1304232, at *7 (D. Mass. Mar. 27, 2014) (quoting Kirtz v. Wells Fargo Bank N.A., 2012 WL 5989705, at *12 (D. Mass. Nov. 29, 2012)). However, the record does not indicate that BANA's conduct was so unresponsive as to support liability under Chapter 93A. Indeed, the letters that Lee submitted as record evidence that BANA repeatedly demanded the

5

same information were in fact notifications that information in his application was "incomplete or out-of-date." (Pl.'s Mem. Supp., Ex. 26 at 6 (dkt. no. 17-1).) Genworth also e-mailed Lee to inform him that "supporting documentation" was still necessary to complete his application. (Id., Ex. 27 at 9 (dkt. no. 17-1).) To be sure, some of BANA's communications may have been confusing for an individual unfamiliar with the mortgage modification process. Dealing with a corporate bureaucracy can be maddening. But without some established obligation on the part of BANA to act on a particular schedule, and in the absence of a demonstration of failure to live up to express promises or other "unethical[] or unscrupulous[]" behavior, the record here is insufficient to support a conclusion that BANA's actions (or inactions) were unlawful and remediable under Chapter 93A. See Markle v. HSBC Mortgage Corp., 844 F. Supp. 2d 172, 186 (D. Mass. 2011). For example, BANA's letters requesting additional information failed to specify which materials were missing from Lee's application. However, such instances of miscommunication do not rise to the level of unfair and deceptive practices under Chapter 93A. Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 263 (D. Mass. 2011) ("[N]ot every technical violation of HAMP should expose a servicer to Chapter 93A liability."); Kozaryn v. Ocwen Loan Servicing, LLC, 784 F. Supp. 2d 100, 103 (D. Mass. 2011) ("Without further factual detail demonstrating unfairness, as opposed to clerical error or mere negligence, [a] claim for a violation of Chapter 93A cannot be sustained.").

## IV. Conclusion

For the reasons stated herein, BANA's Motion (dkt. no. 46) for Summary Judgment is GRANTED. Judgment shall enter in the defendant's favor.

It is SO ORDERED.

                                    /s/ George A. O'Toole Jr.
                                    United States District Judge